RECEIVED
IN LAKE CHARLES, LA.

IJAN -9 2013

TONY R. MOORE, CLERK
BY
DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **TAMMY GATTE, ET AL** | : | **DOCKET NO. 2:11-CV-2083-PM-KK (LEAD), 2:12-CV-0991-PM-KK (MEMBER)** |
| **VS.** | : | **JUDGE MINALDI** |
| **READY 4 A CHANGE, LLC, ET AL** | : | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the court is the defendants, Judy Dohm and Ready 4 A Change, LLC's

(collectively, "R4C defendants") Motion to Dismiss under Rule 12(b) for Lack of Jurisdiction,

Improper Venue, Insufficient Service of Process, and Failure to State Claim [Doc. 22 in case no.

2:11-2083, Doc. 6 in case no. 2:12-0991]. The plaintiffs, Tammy Gatte (representative of the

decedent Phillip Gatte's estate) and her son, Colby Gatte, timely filed a response [Doc. 24 in case

no. 2:11-2083, Doc. 13 in case no. 2:12-0991]. The R4C defendants then filed a reply [Doc. 25

in case no. 2:11-2083, Doc. 16 in case no. 2:12-0991].[1]

---

[1] The lead case was subsequently consolidated with a later case the plaintiffs filed on March 2, 2012 in the 14th Judicial Court, Calcasieu Parish, against the same defendants (and one additional defendant, Dr. Brian Gamborg, whom the plaintiffs later voluntarily dismissed), alleging identical facts and identical legal arguments (case no. 2:12-0991). The second case was then removed to this court on April 24, 2012 [Doc. 1 in 2:12-0991]. In both the earlier case and the later case, the plaintiffs also asserted claims against six other defendants: Dr. Rafael Velasco Marin, Dr. Ezequiel Gamez Hinojosa, Dr. Hector Joadquin Perez Corzo, Ms. Guillermina Gamez, and Clinica Victoria. The plaintiffs voluntarily dismissed the six parties without prejudice from the earlier case on April 23, 2012 [Doc. 18 in 2:11-2083], but did not dismiss them from the second case, which was removed to this court a day later, on April 24, 2012. Not. of Removal, [Doc. 1 in case no. 2:12-0991]. This issue (the defendants being party to the second lawsuit but not the first) became moot when the undersigned granted the parties' joint motion to consolidate the two cases on

1

Also before the court is the defendants, Clinica Victoria, Dr. Ezequiel Gamez Hinojosa, and Maria Guillermina Gamez's (collectively, "Clinica defendants") Motion to Dismiss [Doc. 18 in case no. 2:12-0991[2]]. The plaintiffs responded by filing a Motion to Continue Hearing and Briefing Deadline on Defendants' Motion to Dismiss to Allow Discovery, or in the Alternative Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss [Doc. 29 in case no. 2:11-2083, Doc. 23 in case no. 2:11-0991]. The Clinica defendants subsequently filed a reply [Doc. 34 in case no. 2:11-2083]. The plaintiffs then filed a sur-reply [Doc. 42 in case no. 2:11-2083]. As a companion motion to this Motion to Continue Hearing and Briefing Deadlines to Allow Discovery, the plaintiffs also filed a Motion for Discovery currently pending before Magistrate Judge Kay, reasserting all of their arguments from their earlier Motion to Continue [Doc. 36 in case no. 2:11-2083]. The R4C defendants filed a response [Doc. 40 in case no. 2:11-2083], as did the Clinica defendants [Doc. 39 in case no. 2:11-2083].

For the foregoing reasons, the R4C defendants' Motion to Dismiss is GRANTED, the Clinica defendants' Motion to Dismiss is GRANTED, and the plaintiffs' Motion to Continue Hearing and Briefing Deadline on Defendants' Motion to Dismiss to Allow Discovery and related Motion for Discovery are DENIED.

---

October 30, 2012. Order on Joint Mot. to Consolidate, [Doc. 32 in case no. 2:11-2083].

[2]As noted in footnote 1, the plaintiffs voluntarily dismissed the Clinica defendants on April 23, 2012 from the first lawsuit, case no. 2:11-2083 [Doc. 18 in case no. 2:11-2083]. The plaintiffs have not dismissed the Clinica defendants from the second lawsuit (case no. 2:12-0991), which this court subsequently consolidated with case no. 2:11-2083 on October 30, 2012, right after the Clinica defendants filed their motion to dismiss in the second case on October 6, 2012. The undersigned notes that two other defendants, Dr. Rafael Velasco Marin and Dr. Hector Joaquin Corzo (who are also Mexican defendants, like the Clinica defendants), have not made an initial appearance in this matter.

# BACKGROUND

The instant case arises out of two nearly identical personal injury/wrongful death actions filed on November 4, 2011, and March 2, 2012 in the 14th Judicial District Court of Calcasieu Parish,[3] against the defendants by the decedent Phillip Gatte's wife and son, Tammy Gatte and Colby Gatte (respectively). The two cases were subsequently removed to this court and then consolidated.[4]

This case arose after the decedent, Lake Charles resident Phillip Gatte, sought the help of Ready 4 A Change, LLC, ("R4C") a Minnesota-based company which specializes in connecting people who desire affordable weight loss surgery with hospitals and doctors in Mexico who provide this surgery.[5]  Mr. Gatte first interacted with two R4C co-owners: Minnesota resident Judy Dohm and Florida resident Janet Smith (who is not named as a defendant in this action) in 2008 after coming across their website, www.bariatricweightloss-surgery.com.[6] Through email and telephone correspondence, Smith and Dohm arranged for Mr. Gatte to go to Clinica Victoria in Cancun, Mexico for weight loss surgery.[7]

---

[3]Based on the plaintiffs' briefs in this motion, it appears that the plaintiff filed the second case to cure a potential procedural defect with the service of process on Ms. Dohm, whom the defendants allege was fraudulently induced into coming to Louisiana by the plaintiffs to be served with process, under the ruse of Ms. Dohm delivering the deceased Mr. Phillip Gatte's ashes to the plaintiffs. *See* R4C Defs.' Mot. to Dismiss, [Doc. 22-1 in case no. 2:11-2083] at pg. 22; *see also* Pls.' Resp. to R4C Defs' Mot. to Dismiss, [Doc. 13 in case no. 2:12-0991], at pg. 10.  The plaintiffs served Ms. Dohm pursuant to Louisiana's long arm statute in the second case. *See* "Letter of Reference" [Doc. 1-5 in case no. 12-0991].  As this alleged procedural defect was present only in the first case, and not the second , the undersigned will not address the fraudulent inducement/service of process issue brought up by the R4C defendants in their first motions to dismiss.

[4][Doc. 32 in case no. 2:11-2083].

[5]Pl.'s Compl., [Doc. 1-5 in case no. 2:11-2083], at ¶ 5.

[6]Pls.' Resp. to R4C Defs.' Mot. to Dismiss [Doc. 24 in case no. 2:11-2083], at pg. 3.

[7]*See* Email Correspondence between Mr. Gatte, Ms. Dohm, and Ms. Smith, Ex. 2 to Pls.' Resp. To R4C Defs.' Mot. to Dismiss, [Doc. 24-2 in case no. 2:11-2083].

3

Apparently this surgery was successful, because in 2011 Mr. Gatte again contacted R4C, this time initially corresponding with R4C co-owner Alma Orozco (a Mexican citizen, also not named in this action) to set up a post-weight loss contouring and body sculpting surgery.[8] The plaintiffs allege that Mr. Gatte underwent an application and screening process through R4C's website to ensure he was eligible for surgery.[9] After a disagreement with Orozco on which medical facility and doctors he should pick, Mr. Gatte instead turned to Ms. Dohm for suggestions.  Ms. Dohm subsequently directed Mr. Gatte to Dr. Rafael Velasco, a Mexican physician, who would perform Mr. Gatte's surgery at Clinica Victoria (the facility where Mr. Gatte had his first surgery).[10]  Mr. Gatte then paid Ms. Dohm $1,353.92 as a "deposit fee," with roughly $400 of the fee going toward airfare to Cancun.[11]  The plaintiffs note that a second check was then paid directly to Dr. Gamez at Clinica Victoria.[12]

As a result of this second surgery, allegedly due to the negligence of the doctors at Clinica Victoria, Mr. Gatte passed away from medical complications on October 26, 2011, the day after his surgery.[13]  Mr. Gatte's wife and son then filed this personal injury/wrongful death lawsuit, naming as defendants R4C, Judy Dohm, Clinica Victoria, Dr. Gamez and Ms. Gamez (the

---

[8]*Id.*; *see also* Aff. of Judy Dohm, Ex. to R4C Defs.' Mot. to Dismiss [Doc. 6-3 in case no. 2:11-2083].

[9]Pls.' Mem. in Supp. of Mot. to Cont. Hr'g and Briefing Deadline or Alternative Mem. in Opp. To Clinica Defs.' Mot. to Dismiss, [Doc. 23-1 in case no. 2:11-2083] at pg. 4.

[10][Doc. 6-3 in case no. 2:11-2083]; *see also* Aff. of Dr. Ezequiel Gamez Hinojosa, Ex. to Clinica Defs.' Mot. to Dismiss, [Doc. 18-3 in case no. 12-0991] at pg. 4.

[11][Doc. 6-3 in case no. 2:11-2083].

[12]Gatte Check for Dr. Gamez, Ex. C to Pls.' Resp. to Clinica Defs.' Mot. to Dismiss [Doc. 23-5 in case no. 2:11-2083].

[13][Doc. 1-5 in case no. 2:11-2083] at ¶ 21.

owners/directors of Clinica Victoria), Dr. Rafael Velasco, and Dr. Hector Joaquin Corzo (who also allegedly performed Mr. Gatte's surgery).[14]

The R4C defendants and the Clinica defendants now bring their Motions to Dismiss.

## A.    The R4C Defendants' Motion

In their motion, the R4C defendants first argue that this court does not have personal jurisdiction over them, as both Ms. Dohm and R4C are domiciliaries of Minnesota, and Mr. Gatte's injuries all stemmed from the "acts or omissions of doctors in Cancun, Mexico and a hospital in Cancun, Mexico" and *not* from anything that happened in Louisiana.[15]  Additionally, they allege that the only contact Mr. Gatte had with R4C came from the R4C website, and that this alone is insufficient to establish either specific or general personal jurisdiction over them.[16] Further, they allege that their burden in litigating in Louisiana would be substantial, since neither Ms. Dohm nor R4C has any contacts with this state.[17]

Next, they allege that service on Ms. Dohm was improper because the plaintiffs lured her into Louisiana under false pretenses (namely, to transport the Mr. Gatte's ashes from Mexico to his family in Lake Charles).[18]  The undersigned notes that this deficiency is not present in the second case, in which the plaintiffs instead served Ms. Dohm pursuant to Louisiana's long-arm

---

[14][Doc. 23-1 in case no. 2:11-2083].

[15][Doc. 22-1 in case no. 2:11-2083] at pg. 5.

[16]*Id.* at pg. 6.

[17]*Id.* at pg. 11.

[18]*Id.* at pgs. 3-4.

statute, and thus the fraudulent service issue will not be addressed in this memorandum.[19]  Next, the R4C defendants move to dismiss all claims against Ms. Dohm personally, because as a member of a limited liability company, they allege she cannot be held personally liable for any torts committed by the company.[20]  Finally, they argue that venue is improper because they do not reside in Louisiana, and that the court should transfer this case to Minnesota.[21]

The plaintiffs, in their response to R4C's motion, first assert that they have stated an actionable claim against the R4C defendants because the defendants' tortious conduct began when R4C lured Mr. Gatte into using their services, deceiving him into thinking he was choosing a safe, cheaper option to weight loss surgery in America.[22]  They also allege that the R4C defendants did establish sufficient minimum contacts to create personal jurisdiction in Louisiana, as they had a "highly interactive" website which actively enticed potential clients like Mr. Gatte to seek out the services of R4C.[23]  In their second motion, they note that, as per Ms. Dohm's affidavit, R4C has had at least sixteen clients from Louisiana, arguing that this constitutes sufficient continuous and systematic contacts with Louisiana in order to establish general jurisdiction.[24]  Further, they argue that the extent of interaction between the R4C defendants and

---

[19]In their motion to dismiss filed in the second case (2:12-0991), the R4C defendants briefly address the fact that the plaintiffs allegedly fraudulently served Ms. Dohm in the first lawsuit, but do not go into depth on fraudulent service of process like they did in their first motion to dismiss.  Otherwise, their second motion to dismiss is nearly identical to the motion to dismiss filed in the first case. *See* R4C Defs.' Mot to Dismiss, [Doc. 6-1 in case no. 2:12-0991].  *See* also Gatte Service Instructions, [Doc. 2-5].

[20]*Id.* at pg. 18.

[21]*Id.* at pg. 25.

[22]Pls.' Mem. in Opp. to R4C's Mot. to Dismiss [Doc. 13 in case no. 2:12-0991], at pg. 4.

[23][Doc. 24 in case no. 2:11-2083] at pg.8.

[24][Doc. 13 in case no. 2:11-0991] at pg. 4.

Mr. Gatte while he was in Louisiana preparing for his surgeries (phone calls to plan his travel to Mexico, payments to both R4C and Clinica Victoria while he was in Louisiana) also indicates sufficient minimum contacts with Louisiana.[25]

Next, they allege that Ms. Dohm must be personally liable, separate and apart from R4C, for Mr. Gatte's injuries because she "concocted a complicated scheme of intertwined websites in partnership with one or more Mexican doctors to solicit patients in the U.S. for medical treatment in Mexico."[26]  Finally, the plaintiffs address the fraudulent service of process issue, which, as discussed *supra*, is not an issue in the second lawsuit.[27]

In the R4C defendants' reply, the defendants first argue that R4C did not have a duty to warn Mr. Gatte about the dangers inherent in post-bariatric surgery, and that the onus instead was on Mr. Gatte's doctors to warn him of potential complications of surgery.[28]  They allege that, despite the plaintiffs' contentions, neither R4C nor Ms. Dohm ever "reached out" to Mr. Gatte to induce him to obtain surgery through the R4C website.[29]  They note that the R4C website was a passive website which Mr. Gatte simply used for informational purposes.[30]  They then reassert that all of the alleged tortious conduct happened in Mexico, that this court clearly does not have

---

[25][Doc. 24 in case no. 2:11-2083] at pg. 7.

[26]*Id.* at pg. 5.

[27]*See* [Doc. 2-5 in case no. 2:11-2083].

[28]R4C Defs.' Resp. Mem. to Pls.' Mem. in Opp. To Rule 12(b)(6) Mot., [Doc. 25 in case no. 2:11-2083] at pg. 1

[29]*Id.* at 2. The R4C defendants attached as exhibits emails back and forth from Mr. Gatte and Ms. Dohm and an affidavit from Ms. Dohm, which they argue both indicate that Mr. Gatte was the one who sought out R4C's help, and not the other way around. *See generally* [Docs. 25-1, 25-2, 25-3, 25-4, 25-5, 25-6 in case no. 2:11-2083].

[30]*Id.*

jurisdiction over the other Mexican defendants, and that R4C is a small Minnesota business, and thus would be unduly prejudiced if it had to defend itself in court in Louisiana.[31]

### B.      The Clinica Defendants' Motion

The arguments in the Clinica defendants' motion to dismiss are similar to the R4C defendants' motion.  In their motion, they move to dismiss the case for lack of personal jurisdiction and on *forum non conveniens* grounds.  They argue that neither specific nor general jurisdiction exists for each Clinica defendant (Clinica Victoria, a medical facility incorporated in Mexico; Dr. Gamez, a physician and owner/director of Clinica Victoria; and, Ms. Gamez, the co-owner of Clinica Victoria Dr. Gamez' wife), and that none of them have any contacts with Louisiana.[32]

With respect to specific jurisdiction, they argue that Clinica Victoria did not solicit Mr. Gatte through any website, and did not have a partnership with the R4C defendants.[33]  In support of their argument that general jurisdiction does not exist, they argue that Clinica Victoria has absolutely no contact with Louisiana (or the United States as a whole), and thus lacks "sufficient, substantial, continuous and systematic contacts" with this state.[34]  They note that, while Clinica Victoria has a website (much like R4C), Clinica Victoria designed it to attract clients in Mexico only, and thus the site is not interactive enough to establish personal jurisdiction.[35]  Finally, they

---

[31]*Id.*

[32]Clinica Defs.' Mot. to Dismiss, [Doc. 20 in case no. 2:12-0991], at pgs. 6-7.

[33]*Id.* at pg. 11.

[34]*Id.* at pg. 15.

[35]*Id.* at pg. 16.

argue that allowing Louisiana to exert jurisdiction over this case would violate notions of fair play and substantial justice, noting that this argument also should indicate to the court that venue is inconvenient and improper.[36]

In the plaintiff's response/Motion to Continue Hearing and Briefing Deadlines to Conduct Discovery and Motion for Discovery, they dissect the language on the R4C website, noting that there are several instances where the R4C site mentions Clinica Victoria, indicating that the R4C defendants were actively promoting Clinica Victoria to American clients (and thus Clinica Victoria directly benefitted when clients chose it through the R4C website).[37] The plaintiffs argue that, to the extent the parties disagree on whether the Clinica defendants have an ongoing business relationship with the R4C defendants and have benefitted from R4C's "highly interactive" website, this "creates factual issues that remain outstanding and must be fleshed out [via discovery] prior to the Court considering a motion to dismiss or forum non grounds."[38]

The plaintiffs then repeat their arguments in favor of personal jurisdiction that they asserted in their response to R4C's motion: essentially, that because Clinica and R4C were in a mutually beneficial business relationship, any interaction Mr. Gatte had while in Louisiana with the R4C defendants attaches to the Clinica defendants as well. [39] In support of their argument that exerting jurisdiction over the defendants would not violate notions of fair play and substantial justice, they argue that Louisiana has an interest in this case, because the defendants

---

[36] *Id.* at 20, 23.

[37] Pls.' Mot. To Continue Hr'g and Br. Deadlines to Conduct Disc., or in the Alternative Pls.' Mem. in Opp. to Clinica Defs.' Mot. to Dismiss [Doc. 29-1 in case no. 2:11-2083] at pg. 3.

[38] *Id.* at pg. 6.

[39] *Id.* at pg. 9.

could have used Louisiana laws to protect them: namely, if Mr. Gatte had failed to write them a check or his check was not honored, the "Louisiana civil justice system and criminal justice system" would have ensured the defendants would get paid.[40]

In response, the Clinica defendants first argue that the plaintiffs' requests for discovery should not be granted, as the court can resolve the issues of personal jurisdiction and *forum non conveniens* on the parties' briefs.[41]  Further, they reassert their arguments in favor of the court finding no personal jurisdiction: (1) the Clinica defendants do not have a business relationship with R4C and thus did not solicit Mr. Gatte through R4C's website; (2) Mr. Gatte paying for his surgery while in Louisiana is not enough to show minimum contacts; and, (3) the fact that R4C has had sixteen other Louisiana clients is irrelevant to Clinica Victoria, because Phillip Gatte is the only Louisiana client they have had.[42]  Finally, they aver that just because Mr. Gatte sent them a payment from Louisiana does not create personal jurisdiction.[43]

In the plaintiffs' sur-reply, they argue that the court should grant their discovery motion, because the undersigned "deserves to know the complete version of events, not simply those self-serving bits of information solicited by defendants' attorneys to escape this Court's power to rule upon matters occurring within its jurisdiction."[44]  They note that additional discovery will prove their contentions that the alleged tortious conduct did not begin in Mexico, but instead began in

---

[40]*Id.* at pg. 11.

[41]Clinica Defs.' Resp. in Opp. To Pls.' Mot. to Continue Hr'g and Briefing Deadline on Defs.' Mot. to Dismiss to Allow Disc. and Alt. Reply to Pls.' Resp. Mem., [Doc. 25 in case no. 2:11-2083], at pg. 2.

[42]*Id.* at pgs. 2-3.

[43]*Id.* at pgs. 7-8.

[44]Pls.' Sur-reply to Clinica Defs.' Opp. Mem., [Doc. 35-1 in case no. 2:11-2083], at pg. 1.

Louisiana when (1) the R4C website allegedly deceptively marketed unsafe medical procedures to Louisiana residents like Mr. Gatte; and, (2) Mr. Gatte made payments to the defendants in Louisiana to obtain their services.[45] They note that the Clinica defendants must have made some affirmative steps and "reached out" to Louisiana residents like Mr. Gatte in order to induce him to use their facility, since it would be nonsensical to assume that Mr. Gatte "magically" appeared at their facility with no prompting.[46] Instead, they argue that it is clear that their services were sold to Mr. Gatte in Louisiana, scheduled while he was in Louisiana, and paid for while he was in Louisiana, which indicates sufficient contacts in order to establish jurisdiction.[47]

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2)

When a nonresident defendant brings a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff seeking to invoke the jurisdiction of the district court bears the burden of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the court. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985). If the court rules on the motion without an evidentiary hearing, the plaintiff may satisfy this burden by making a prima facie showing of jurisdiction; proof by a preponderance of the evidence is not required. *See Wilson*, 20 F.3d at 648; *WNS, Inc. v. Farrow*, 884 F.2d 200, 204 (5th Cir.1989). In reviewing a motion to dismiss for lack of personal jurisdiction, the court will accept the uncontroverted allegations set forth in the complaint as true. *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999); *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985). When there are conflicts between the parties' affidavits, the

---

[45]*Id.*

[46]*Id.* at 2.

[47]*Id.*

court must resolve the discrepancies in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists. *See Thompson*, 755 F.2d at 1165.

Where, as here, the court's jurisdiction is predicated on diversity of citizenship, the court may exercise jurisdiction over a nonresident defendant if: (1) the forum state's long-arm statute confers personal jurisdiction over the defendant; and (2) exercise of such jurisdiction comports with due process under the Constitution. *See Latshaw*, 167 F.3d at 211; *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir.1985). The Louisiana long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant as far as is permitted by due process. *See* LA.REV.STAT.ANN. § 13:3201(B). The inquiry, therefore, is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional requirements. *See Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir.1990).

The Supreme Court has held that due process is satisfied when the defendant: (1) has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state such that he could anticipate being haled into that state's courts; and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The court must examine fairness only if the plaintiff first establishes that the nonresident defendant has sufficient minimum contacts with the forum state. *See Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir.1997).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (citations omitted).

Further, the "minimum contacts" aspect of the analysis can be established through "contacts that give rise to 'specific' personal jurisdiction or those that give rise to 'general' personal jurisdiction." *Wilson*, 20 F.3d at 647. Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *See id.* (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *See id.* (*citing Helicopteros*, 466 U.S. at 414 n. 9, 104 S.Ct. 1868).

## LEGAL ANALYSIS

### I.     The Plaintiffs have not Made a Prima Facie Case for General Jurisdiction over the Defendants

In support of their argument that the R4C defendants had "continuous and systematic" contact with Louisiana as per the standard for establishing general jurisdiction, the plaintiffs cite several different facts: (1) the R4C defendants' advertising in Louisiana through their website; (2) numerous telephone and e-mail conversations between Ms. Dohm (and other R4C agents)

and Mr. Gatte, both for his 2009 surgery and his 2011 surgery; (3) Ms. Dohm (and other R4C agents) making airline and hotel reservations for Mr. Gatte's travel from Louisiana to Mexico; (4) Mr. Gatte making all of his payments to the defendants (both for his 2009 and 2011 surgery) while in Louisiana; and, (5) Mr. Gatte using R4C on two occasions to set up weight-loss-related surgeries.[48]  They also note that, according to an affidavit from Ms. Dohm, R4C has had at least sixteen clients from Louisiana (possibly more), which also indicates continuous and systematic contacts with Louisiana separate and apart from their interactions with Mr. Gatte.[49]

The R4C defendants argue, in contrast, that they acted as nothing more than a facilitator, as a travel agent would for a tourist, to send Mr. Gatte to Mexico for his surgery.[50]  They note that Ms. Dohm has no property in Louisiana, does not reside, vote, sell, or purchase things in Louisiana, and that at all times relevant to this cause of action, she resided in Minnesota.[51]  In regard to R4C, they note that R4C "simply maintained a web-site [and] did not engage in mass mailings to potential clients, send anything tangible, attend conventions, or advertise in magazines distributed in Louisiana."[52]  They further aver that this case does not arise out of any of the defendants' actions in Louisiana.[53]

The plaintiffs' arguments in support of general jurisdiction over the Clinica defendants are more tenuous.  They argue that "Mr. Gatte's . . . surgery at Clinica Victoria in Cancun [was]

---

[48][Doc. 13 in case no. 12-0991], at pgs. 7-8.

[49]*Id.* at pg. 8.

[50][Doc. 6-1 in case no. 2:11-0991], at pg. 4.

[51]*Id.* at pg. 6.

[52]*Id.*

[53]*Id.* at pg. 7.

orchestrated through the Ready4AChange website."[54]  They argue that the Clinica defendants and R4C defendants were in a business partnership together and advertised their services together on R4C's website.[55]  Essentially, by asserting that a business relationship exists between the R4C defendants and Clinica defendants, the plaintiffs use this as a way to bootstrap any and all contact the R4C defendants might have had with Mr. Gatte to the Clinica defendants in Mexico, using R4C as the link to connect the Clinica defendants to Louisiana.[56]  They also argue that Mr. Gatte paid Clinica Victoria for his operations while in Louisiana, and that it is possible that the Clinica defendants and R4C defendants shared revenue when a client was referred from the R4C website to Clinica Victoria (although the plaintiffs assert that they need discovery to prove this contention).[57]

The Clinica defendants rebut the plaintiffs' contentions, most notably in Dr. Gamez's statement, in which he states that (1) Clinica Victoria is a hospital in Mexico; (2) it does not have any agents, business affiliates, or commission agents in Louisiana; (3) it does not do business nor is it authorized to do business in Louisiana; (4) it has no authorized agent for service of process in Louisiana; (5) it has no employees or offices in Louisiana; (6) it has no property in Louisiana; (7) it has never brought suit or been subject to jurisdiction in any United States court; (8) it does not have a business relationship with R4C; (9) it does not promote its services in Louisiana.[58]

A.     **The Defendants' Internet Contacts: the R4C Website**

---

[54][Doc.23-1 in case no. 12-0991], at pg. 12.

[55]*Id.*

[56]*See id.*

[57]*Id.*

[58]Statement of Dr. Gamez, Ex. 2 to Clinica Defs.' Mot. to Dismiss, [Doc. 18-3 in case no. 12:-0991].

First, the undersigned will address whether the R4C website supports a finding of general jurisdiction.  Leading civil procedure scholars have addressed the affect of the internet on personal jurisdiction:

> Ultimately, personal jurisdiction over a defendant that maintains a website must, like personal jurisdiction over all other defendants, satisfy the jurisdictional constraints placed upon the federal court by the forum state or any applicable federal statute and the due process analysis established by *International Shoe Company v. State of Washington* and its progeny. . . .
>
> Thus, the analysis applicable to a case involving jurisdiction based on the Internet (or any other modern technology) should not be different at its most basic level from any other personal jurisdiction case. If the defendant is not physically present in or a resident of the forum state, and has not been physically served in the forum state, the federal court must undertake the traditional personal jurisdiction analysis.
>
> In broad strokes, therefore, a federal court must ask first if the defendant's contacts with the forum state are sufficiently continuous and systematic that they subject the defendant to the court's general jurisdiction. . . . Even though a given defendant's website is accessible at all times (that the website is running) from every state in the nation—indeed, throughout the world—the existing decisions indicate that mere accessibility is not sufficient for general jurisdiction.  Instead, to be subject to general jurisdiction in a given state, a defendant must have continuous and systematic contacts with that state. Thus, for a website to support a finding of general jurisdiction on its own, the defendant must systematically contact the forum state through the Internet over a significant period of time.. . Of course, even if the defendant's website is not sufficient in and of itself to establish jurisdiction, it may be an additional contact that facilitates a finding that the defendant's cumulative contacts with the forum state are sufficiently continuous and systematic to subject the defendant to the federal court's general jurisdiction.

4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1073.1 93 (3d ed. 2002) (footnotes and citations omitted).

In the Fifth Circuit, the 2002 decision *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) is the benchmark case on internet contacts and general jurisdiction.  In *Revell*, a Texan resident sued a nonresident professor and university in the Northern District of Texas, alleging that the professor had defamed the plaintiff in an article that he had posted on the university's online bulletin board.

*Id.* at 469.  The nonresident defendants argued that the Northern District of Texas lacked

personal jurisdiction over them, asserting that their website did not establish the requisite

minimum contacts required to establish personal jurisdiction.  *Id.*  The Fifth Circuit agreed with

the defendants, noting that "[t]hough the maintenance of a website is, in a sense, a continuous

presence everywhere in the world, the cited contacts of [the university] with Texas are not in any

way 'substantial.'"  *Id.* at 471.  The court compared the facts in its case to the Sixth Circuit's *Bird*

*v. Parsons*, in which the Sixth Circuit found general jurisdiction lacking even though the

defendant maintained a website open for commerce in the forum state, and over 4,000 forum

state residents had registered domain names with the website.  *Id.*  The Fifth Circuit held that if

general jurisdiction was lacking in *Bird*, then it certainly was lacking in its case, as the

university's online bulletin board had received a scant twenty subscriptions total from Texan

residents.  *Id.*

      Here, the R4C website is like most websites: it is accessible at all times to every state in

the nation.  It displays both a phone number and an email address, allowing people who have

discovered the website to reach out to R4C representatives in order to learn more about R4C's

services.[59]  While some Louisiana residents may have used the site to contact R4C for their

services, there is no indication that either the R4C defendants (or the Clinica defendants, for that

matter) have conversely affirmatively reached out and specifically contacted Louisiana residents

through the website on a sufficiently continuous, systematic basis in order for general jurisdiction

to attach.  Further, even assuming all sixteen of R4C's Louisiana clients mentioned in Ms.

Dohm's affidavit used the R4C website to interact with R4C, the reasoning in *Revell* indicates

that this small number of clients in the forum state is too *de minimis* to establish general

---

[59]"Website Printout," Ex. A to Pls.' Resp. to R4C Defs.' Mot. to Dismiss, [Doc. 13-1 in case no. 2:12-0991].

jurisdiction. *Id.* Thus, the website, by itself, is insufficient to prove up a prima facie showing of general jurisdiction.

**B.     The Defendants' Traditional Contacts**

In addition to mentioning the R4C website, the plaintiffs also cite three factors in favor of finding that general jurisdiction exists: Mr. Gatte's prior interactions with R4C and Clinica Victoria during his first surgery, R4C's record of sixteen clients from Louisiana since 2007,[60] and Mr. Gatte paying the Clinica defendants for his surgery while he was in Louisiana.[61]  The R4C defendants submit, as proof that general jurisdiction is lacking, Judy Dohm's affidavit, in which she notes that only sixteen out of over a thousand of R4C's clients have been from Louisiana, thus accounting for a very small percentage of their total clientele.[62]

The undersigned remains unconvinced that the plaintiffs' proof of fleeting and limited contacts with Louisiana are sufficient to create a prima facie showing of general jurisdiction. First, addressing the argument that R4C has had at least sixteen clients from Louisiana, the undersigned notes that such an insignificant percentage (less than two percent) of business from one state does not indicate sufficient minimum contacts. *See Bearry v. Beech Aircraft Corp.*, 818 F.2d 375-76 (5th Cir. 1987) (finding no general jurisdiction in Texas despite the fact that defendant sold products to seventeen dealers in Texas); *see also J-L Chieftain, Inc. V. Western Skyways, Inc.*, 351 F.Supp. 2d 587 (E.D. Tex. 2004) (finding no general jurisdiction in Texas despite 7.14% of the defendant's sales coming from Texas).

Further, Mr. Gatte paying for R4C and Clinica Victoria's services while in Louisiana,

---

[60][Doc. 29-1 in case no. 2:11-2083], at pgs. 4-5.

[61][Doc. 23-1] at pg. 9.

[62]Aff. of Judy Dohm, Ex. to R4C Defs.' Mot. to Dismiss, [Doc. 6-3].

18

whether through a website or not, is not sufficient to establish the requisite contacts. *See Burger King*, 471 U.S. at 478-79, 105 S.Ct. 2174 (holding that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction). Looking to the allegations made in the plaintiffs' complaint, it appears that while the defendants may have a relationship *with* clients Louisiana, this does not indicate purposeful availment *in* Louisiana. *See Access Telecom. Inc. V. MCI Telecom. Corp.*, 197 F.3d 694 (5th Cir. 1999) (in holding that contacts were insufficient to exercise general jurisdiction, the court stated "while [defendant's] other contacts may be continuous and systematic contacts which constitute doing business *with* Texas, [defendant] has virtually no contacts which constitute doing business *in* Texas). Here, while the plaintiffs have pointed to evidence that the R4C defendants, at the very least, have done some business *with* people in Louisiana, the interactions seem to be centered around doing business *in* Minnesota (where R4C agents set up travel arrangements) and *in* Mexico (where the surgeries actually occured). Thus, general jurisdiction over the defendants is lacking.

## II.     The Plaintiffs have not Made a Prima Facie Case for Specific Jurisdiction over the Defendants

The plaintiffs next argue that, even in the absence of general jurisdiction, the R4C defendants' contacts arising from this specific case are sufficient to establish specific jurisdiction. In addition to all of the interaction mentioned *supra* between Mr. Gatte and the defendants, the plaintiffs argue that the R4C website "reached out" to Mr. Gatte and induced him to come to Mexico for his surgery.[63]  In support of their contention that this court has specific jurisdiction over the Clinica defendants, they again assert that there is a business relationship between the Clinica defendants and the R4C defendants, and thus any and all factors which point in favor of

---

[63][Doc. 13 in case no. 2:12-0991], at pg. 3.

specific jurisdiction over the R4C defendants applies to the Clinica defendants as well.[64] They allege that they need to conduct jurisdictional discovery in order to flesh out this alleged business relationship.[65] The one factor exclusively relevant to the Clinica defendants that the plaintiffs cite in favor of specific jurisdiction over the Clinica defendants is that Mr. Gatte wrote a check to Clinica Victoria while he was in Louisiana.[66]

### A.    The R4C Website

In support of their argument that the R4C website supports a finding of specific jurisdiction because of how highly interactive it is, the plaintiffs cite heavily to the *Zippo* "sliding scale" standard first articulated in the Western District of Pennsylvania and later adopted by the Fifth Circuit, and argue that the R4C website is interactive enough to establish specific jurisdiction.[67]

In the Fifth Circuit, *Mink v. AAAA Development LLC*, 190 F.3d 333 (5th Cir. 1999) is instructive on the specific jurisdiction via website inquiry.  In *Mink*, the Fifth Circuit's Judge Parker noted that

> Courts addressing the issue of whether personal jurisdiction can be constitutionally exercised over a defendant look to the "nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997). The *Zippo* decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet...." *Zippo*, 952 F.Supp. at 1124. In this situation, personal jurisdiction is proper. *See id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996)). At the other end of the spectrum, there are situations where a

---

[64][Doc. 23-1 in case no. 2:12-0991] at pg. 9.

[65]*Id.*

[66]*Id.*

[67]*Id.* at pg. 4.

defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. *See id.* (citing *Bensusan Restaurant Corp., v. King*, 937 F.Supp. 295 (S.D.N.Y.1996), aff'd, 126 F.3d 25 (2d Cir.1997)). In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.* (citing *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996)). We find that the reasoning of *Zippo* is persuasive and adopt it in this Circuit.

*Id.* at 336.

Judge Parker found, in applying the *Zippo* framework to the facts in *Mink*, that "there was no evidence that [the defendant] conducted business over the Internet by engaging in business transactions with forum residents." *Id.* at 337. The website simply acted as a passive advertisement for the company, with the only "interactivity" factor being that the defendant could respond to emails potential clients sent through the website. *Id.* He noted that many of the hallmarks of interactivity other courts had found important when determining specific jurisdiction, such as allowing customers to order products or services online, were not available on the defendants' website. *Id.* Instead, the website directed potential customers to remit completed order forms by regular mail or fax. *Id.*

Here, the undersigned notes that the R4C website cannot be firmly classified as a passive, advertisement-only website. As in *Mink*, the website includes several different ways that potential clients can interact with R4C: there is a "live chat" option, and the site also prominently displays a telephone number and email address for interested potential clients who want to learn more about R4C.[68] Potential clients can also fill out applications online.[69] Based on the

---

[68][Doc. 13-1 in case no. 2:12-0991].

[69]*Id.*

21

plaintiffs' allegations, Mr. Gatte obtained R4C's contact information through this website, and also filled out application/screening documents through the website.[70] A factor which strongly tips this inquiry toward a finding of interactivity is that the website allows clients to make down payments to R4C through the website.[71] While it is unclear whether Mr. Gatte actually made his down payment for the surgery online, the ability to pay for services or goods through a defendants' website is an important factor in determining whether specific jurisdiction exists. *See Tempur-Pedic Intern., Inc. v. Go Satellite, Inc.*, 758 F.Supp. 2d 366, 373 (N.D. Tex. 2010) (holding that specific jurisdiction existed in Texas because a website "permits shipping to Texas and enables Texas residents to pay for an purchase products online"); *but see Percle v. SFCL Foods, Inc.*, 356 F.Supp. 2d 629, 638 (M.D. La. 2004) (holding that specific jurisdiction did not exist because "the website does not allow consumers to order or purchase products or services online. . ."). Thus, the website's interactivity cuts in favor of finding specific jurisdiction.

**B.    Traditional Contacts**

While the R4C website lean in favor of a finding of specific jurisdiction, the undersigned notes that the traditional contacts are more important to the inquiry in this case, as this case is distinguishable from *Mink* and its progeny. This is so because in cases like *Mink*, the gravamen of parties' causes of action result purely from activities conducted on websites. For example, in *Mink*, the plaintiff's cause of action arose out of the defendants violating a program developer's copyright and selling an identical product to the plaintiff's for financial gain. *Mink,* 190 F.3d 335. The defendants advertised the product on their website. *Id.* Here, while the plaintiffs allege that the R4C defendants misled Mr. Gatte into undergoing surgery through their website,

---

[70][Doc. 13] at pg. 5.

[71]*Id.*

22

the fact remains that the gravamen of the complaint concerns activities that happened in Mexico. Mr. Gatte was allegedly induced by the defendants to travel to Mexico for his surgery, and ultimately, it was the alleged medical malpractice of doctors in Mexico which led to his demise.

Turning to the traditional contacts cited by the plaintiffs, they mainly center around Mr. Gatte's phone and email conversations with the R4C defendants with various R4C agents. The R4C agents, in their emails, primarily discuss travel arrangements, and also advise Mr. Gatte to a limited extent on different weight loss surgeries, offering testimonials on how well Mexican weight loss surgery has worked for them and other clients.[72]  In their briefs, the plaintiffs also place a significant amount of emphasis on the fact that Mr. Gatte also paid for both of his surgeries while in Louisiana.[73]

The Fifth Circuit's decision in *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985) sheds some light on whether these communications between a non resident defendant and a resident plaintiff are sufficient to constitute minimum contacts.  In *Spademan*, Texan residents brought an action in the Northern District of Texas  to recover damages for breach of contract against a nonresident defendant in the Northern District of Texas.  *Id.* at 1187.  The defendant was a ski designer who resided in Nevada.  *Id.* at 1188.  Initially, the Texan residents contacted the Nevadan defendant to send him some design improvements (namely, improvements to the ski's bindings) to the defendant's ski.  *Id.*  After subsequent negotiations by letter and telephone, the Texan plaintiffs assigned the patent to the Nevadan defendant, with the defendant to pay "royalties" to the plaintiffs in return.  *Id.*  When the defendant stopped making payments to the plaintiffs, they filed suit, and the defendant filed a motion to dismiss for lack of personal

---

[72][Doc. 13-2 in case no. 2:12-0991].

[73][Doc. 23-1 in case no. 2:12-0991], at pgs. 8-9.

23

jurisdiction. *Id.* at 1189.

Chief Judge Randall found that Texas did not have personal jurisdiction over the Nevada defendant. First, she cited the benchmark Supreme Court case, *Burger King* to support the premise that an individual's contract with an out-of-state party alone does not automatically establish sufficient minimum contacts in the other party's forum. *Id.* at 1193. Applying the *Burger King* reasoning to the facts in *Spademan*, Judge Randall noted that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws." *Id.* Addressing the plaintiffs' argument that personal jurisdiction should attach because the Nevada defendant mailed checks to them in Texas, Judge Randall noted that "[t]he agreement to mail payment checks into the forum state does not weigh heavily in the calculus of contacts. . . Hence, [the defendant's] mailing of payments to the plaintiffs in Texas can hardly be termed significant in terms of determining purposeful availment of the benefits of the forum state." *Id.* at 1194.

Here, while some of the contact is the inverse of the events in *Spademan*,[74] Mr. Gatte and the defendants' activities while Mr. Gatte was in Louisiana are sufficiently analogous to come to the same conclusions on specific jurisdiction as in *Spademan*. Mr. Gatte exchanged information with R4C agents, who advised him where he should have his surgery done, made representations about the safety of the procedure, and set up his travel to Mexico.[75] In return, Mr. Gatte made a down payment to R4C, and later paid for his surgery by sending a check to Clinica Victoria.[76]

---

[74]For example, instead of the defendant mailing a check to the forum state like in *Spademan*, here, the check is being mailed from the forum state by the plaintiff.

[75]*See generally* [Doc. 1-5 in case no. 2:11-2083].

[76][Doc. 23-1 in case no. 2:12–0991], at pg. 9.

While the plaintiffs do not style their cause of action as a breach of contract action against the R4C defendants, that is exactly what it appears to be: the R4C defendants' liability turns on their express written and oral representations to a client on the safety of a service. Just as in *Spademan*, the fact that Mr. Gatte resided in Louisiana while the parties were entering into a "contract" is not determinative on whether specific jurisdiction is proper in Louisiana, particularly since this "contract" was ultimately carried out in Mexico when Mr. Gatte underwent his surgery. Further, just as in *Spademan*, as in this case, the fact that a person in Louisiana wrote a check to residents of Minnesota (the R4C defendants) and Mexico (the Clinica defendants) alone does not weigh heavily on the calculus of contacts. Assessing the totality of the defendants' contacts with Louisiana, the undersigned finds that they are insufficient to establish specific jurisdiction.

Finally, the undersigned will address the plaintiffs' argument that jurisdictional discovery is necessary in order to flesh out the business relationship between the R4C defendants and the Clinica defendants.[77] As the undersigned finds that the court does not have personal jurisdiction over the R4C defendants, the plaintiffs' Motion to Stay Hearing and Briefing Deadlines to Conduct Discovery and Motion for Discovery are rendered futile. The plaintiffs' motions presuppose that the plaintiffs have made a prima facie showing of personal jurisdiction over the R4C defendants (the parties who had much more contact with Mr. Gatte while he was in Louisiana), and further presupposes that, if jurisdictional discovery proceeded, it would prove a sufficient business relationship such that any jurisdictional findings on the R4C defendants could be bootstrapped to the Clinica defendants.[78] As the undersigned finds that the plaintiffs cannot

---

[77][Doc. 23-1 in case no. 2:12-0991]; [Doc. 36 in case no. 2:11-2083].

[78]*See generally id.*

meet the first requirement of proving their prima facie case for personal jurisdiction over the R4C defendants, further jurisdictional discovery on the relationship between R4C and the Clinica defendants would be futile, and thus the undersigned will not allow jurisdictional discovery to proceed.

### III.    Traditional Notions of Fair Play and Substantial Justice

Finally, the undersigned notes that even if, through jurisdictional discovery, the plaintiffs could establish a prima facie case for specific jurisdiction, a finding of jurisdiction over these defendants would still offend traditional notions of fair play and substantial justice.  For this portion of the inquiry, a court must evaluate several factors, including the burden on the defendant, the forum state's interest in resolving the dispute, the plaintiff's interest in obtaining convenient and effective relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.  *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987); *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564–65.

First, the burden on both the Clinica defendants and the R4C defendants would be substantial if this case proceeded in Louisiana.  The R4C defendants conducted their business activities in Minnesota, and thus any and all witnesses and evidence would presumably be in Minnesota.  The same is true of the Clinica defendants, although in Mexico instead.  Second, the current forum state's interest in resolving this dispute is slight: this case, at its heart, is a medical malpractice cause of action involving Mexican doctors and a Mexican medical facility, and thus the controlling legal standard for many of the alleged torts would presumably arise out of Mexican law.  Regarding the third factor, the plaintiff's interest in obtaining convenient and

26

effective relief, it is true that it would be more convenient for the plaintiffs to litigate this case in Louisiana, since they are Louisiana residents, and thus this factor cuts in favor of finding personal jurisdiction. Turning to the fourth factor, the judicial system's interest in obtaining the most effective resolution of controversies: if this case remains in Louisiana, it may continue to be stymied by the fact that many of the central defendants reside in a different country. Indeed, two of the Mexican defendants have still failed to make an appearance in this lawsuit. The final factor (the shared interest of the several states in furthering social policies) also cuts against a finding of jurisdiction since, as mentioned before, this is, at its heart, a medical malpractice cause of action against Mexican defendants, which will require the application and interpretation of Mexican law. Thus, the traditional notions of fair play and substantial justice prong of the jurisdictional inquiry also cuts against a finding of jurisdiction.[79]

## CONCLUSION

For the reasons stated herein, the undersigned finds that this court lacks personal jurisdiction over the defendants. Accordingly, this case will be dismissed for lack of personal jurisdiction, the R4C defendant's motion will be granted, the Clinica defendants' motion will be granted, and the plaintiffs' motion to extend hearing/briefing deadlines in order to conduct discovery and motion to conduct discovery will be denied.

---

[79]As this court lacks personal jurisdiction over this cause of action, the undersigned will not address the defendants' remaining 12(b)(6), venue, and forum non conveniens arguments.

Lake Charles, Louisiana, this \_\_\_\_ day of _____ 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE